UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:14-CV-24028-GAYLES/TURNOFF

**FRANCIS LA FONTAINE** and **ROBERTO MELENDEZ**, Husband and wife,

   Plaintiffs,

v.

**SIGNATURE RESEARCH, INC.**, *et al.*,

   Defendants.
_____/

## ORDER DISMISSING CASE

  **THIS CAUSE** came before the Court on Defendant Signature Research, Inc.'s Motion to Dismiss ("Motion") [ECF No. 34].[1] The Court has carefully reviewed the Motion, the parties' submissions, the record, and the applicable law and is otherwise advised in the premises. For the reasons set forth below, the Motion is granted.

## I. BACKGROUND[2]

  Plaintiffs Francis La Fontaine ("La Fontaine") and Roberto Melendez ("Melendez"), residents of Michigan, vacationed at the Casa de Campo Resort ("Resort") in the Dominican Republic in May 2014. [ECF No. 1 at ¶¶ 3–4, 31]; [ECF No. 34 at 1]. During their stay at the

---

[1] Defendant Cumayasa Sky Adventure, SRL, was defaulted by the clerk pursuant to Fed. R. Civ. P. 55(a) on March 3, 2015. [ECF No. 24]. Defendants Central Romana Corporation, Ltd., and Corporacion de Hoteles, S.A. d/b/a Hotel Casa de Campo were dismissed by the Court on May 26, 2015, pursuant to the parties' Stipulation of Dismissal [ECF Nos. 30–31]. As a result, the only remaining defendant is Signature Research, Inc, and the only operative claim before the Court is Count I of the Complaint, which alleges negligence as to Signature. [ECF No. 1 at ¶¶ 33–40].

[2] The Court takes the allegations from the Complaint [ECF No. 1] as true for purposes of a Motion to Dismiss. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, in considering a motion to dismiss based on *forum non conveniens*, "the Court may, in deciding Defendant['s] motion, consider facts alleged by Defendant[] in [its] moving papers and by Plaintiffs in response, in addition to the facts alleged by Plaintiffs in the Complaint." *Dabbous v. Am. Exp. Co.*, No. 06 CIV.11345(DAB), 2009 WL 1403930, at *3 n.1 (S.D.N.Y. May 8, 2009)

Resort, Plaintiffs participated in a seven-run ziplining excursion at Cumayasa Sky Adventure, SRL ("Cumayasa"). [ECF No. 1 at ¶¶ 35–36]. Cumayasa is a corporation organized under the laws of the Dominican Republic with its principal place of business in the Dominican Republic. [*Id.* at ¶ 21]. Plaintiffs were provided with a training session and began the zipline course. [*Id.* at ¶ 36]. While harnessed with a Cumayasa employee on the second zipline run, Plaintiff La Fontaine suffered injuries, including vertebral fractures, when the zipline collapsed and she fell 35 to 40 feet to the ground. [*Id.* at ¶ 37]. Plaintiffs filed their Complaint on October 29, 2014.

Defendant Signature Research, Inc. ("Signature"), incorporated in the State of Georgia and maintaining its principal place of business in Douglasville, Georgia, was and is engaged in the business of inspecting, certifying, and installing zipline courses and training zipline personnel, including the Cumayasa zipline that collapsed during Plaintiff La Fontaine's excursion. [*Id.* at ¶¶ 5–6, 33]. Particularly, in December 2013, Signature inspected the Cumayasa zipline and issued a Certificate of Inspection, which was featured on Cumayasa's webpage and accessed by Plaintiffs prior to engaging in the zipline course excursion. [*Id.* at ¶¶ 34–37]; [ECF No. 34-1 at ¶ 5]. Plaintiffs relied on Signature's certification representations when deciding to participate in the Cumayasa zipline course. [ECF No. 1 at ¶ 37].

Plaintiffs allege that Signature is liable in negligence because it failed to inspect the overall design of the Cumayasa zipline; properly train Cumayasa employees or supervise their training; adhere to the appropriate duration between inspection periods; have standards in place for determining the safety of a zipline tour; apply industry standards to the zipline during inspections; adequately inspect the zipline; implement an appropriate inspection schedule to ensure that Cumayasa's zipline was being maintained, including the review of daily inspection logs and the replacement of parts; determine what conditions should constitute failure, denial, or delay of issuance of the Certificate of Inspection; and determine whether all appropriate

scheduled and non-scheduled maintenance was being performed by the zipline operator, including placement of life-limited or wear-limited parts. [*Id.* at ¶ 39]. Plaintiffs further allege that Signature negligently held Cumayasa out to the general public as safe and issued a Certificate of Inspection without determining whether all corrective actions noted in the Inspection Report were performed by the operator. [*Id.*]. As a result of Signature's alleged negligence, Plaintiff La Fountaine was injured and suffered damages. [*Id.* at ¶ 40]. Plaintiff Melendez, the lawful husband of La Fountaine, suffered loss of his wife's services, companionship, comfort, and society as a result of the alleged acts and omissions of Signature. [*Id.* at 17].

On June 2, 2015, Defendant Signature filed this Motion, in which it asks the Court to dismiss the claim against it on the basis of *forum non conveniens* because, *inter alia*, the balance of private and public factors weighs in favor of adjudicating this matter in the Dominican Republic. [ECF No. 34 at 3]. Notably, liability and damages witness are located in the Dominican Republic, including Resort staff, Cumayasa employees, and medical personnel who treated La Fountaine immediately after the accident. [*Id.* at 4–5]. There is no indication that any evidence or witnesses are located in Florida. [*Id.* at 5]. As part of its Motion, Signature stipulates that it will consent to jurisdiction in the Dominican Republic and that it will waive any statute of limitations defense if Plaintiffs bring the action in the Dominican Republic. [*Id.*]. Signature also references affidavits in support of its contention that the Dominican Republic is an available and adequate forum in which Plaintiffs can redress their injuries. *See* [ECF Nos. 25-3 & 34-2]. Plaintiffs, in turn, do not contest the adequacy of the Dominican Republic forum. [ECF No. 56 at 7].

3

## II. LEGAL STANDARD

"Under the doctrine of *forum non conveniens*, a district court has the inherent power to decline to exercise jurisdiction even when venue is proper." *Vanderham v. Brookfield Asset Mgmt., Inc.*, 102 F. Supp. 3d 1315, 1318 (S.D. Fla. 2015) (citation omitted); *see also La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) ("Under the doctrine of *forum non conveniens*, a district court has inherent power to decline to exercise jurisdiction over a case when an adequate, alternative forum is available."). In deciding a motion to dismiss based on *forum non conveniens*, a court will consider whether 1) an adequate alternate forum is available; 2) private interest factors favor the alternate forum, with a strong presumption in favor of Plaintiffs' initial choice of forum; 3) public interest factors favor the alternate forum; and 4) Plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice. *See Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (citation omitted). "The doctrine of *forum non conveniens* permits a court with venue to decline to exercise its jurisdiction when the parties' and the court's own convenience, as well as the relevant public and private interests, indicate the action should be tried in a different forum." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009). While the Court "may consider matters outside the pleadings," it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Vanderham*, 102 F. Supp. 3d at 1318 (citations and internal quotation marks omitted).

## III. ANALYSIS

### A. *The Dominican Republic is an adequate alternate forum.*

The first step in the *forum non conveniens* analysis is "whether an adequate alternative forum exists which possesses jurisdiction over the whole case." *La Suguridad*, 707 F.2d at 1307. The forum must be both available and adequate, which are separate inquiries. *Leon v. Million*

*Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001); *see Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 578 F.3d 1283, 1290 (11th Cir. 2009). The Court notes that district courts in the Eleventh Circuit have found the Dominican Republic to be both an available and an adequate alternate forum in other cases. *See, e.g.*, *Perez-Lang v. Corporacion de Hoteles, S.A.*, 575 F. Supp. 2d 1345, 1349 (S.D. Fla. 2008), *aff'd*, 325 F. App'x 900 (11th Cir. 2009); *Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC*, No. 11-00729-KD-C, 2012 WL 3206671, at *1 (S.D. Ala. Aug. 7, 2012), *aff'd*, 534 F. App'x 826 (11th Cir. 2013).

### 1. Available forum

A foreign forum is available if it is able to assert jurisdiction over the action and if the parties will not be deprived of remedies or treated unfairly. *See Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1376 (S.D. Fla. 2011). However, the forum is still "available" even if it does not provide the same benefits as courts in the United States. *See id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981)). A defendant may usually meet its burden of demonstrating an available forum by indicating it is amenable to service of process or consenting to jurisdiction in the foreign forum. *See Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 865 (11th Cir. 2007). In its Motion, Signature stipulates that it will submit to the jurisdiction of the courts of the Dominican Republic and that it will extend the statute of limitations period to coincide with the applicable Florida statute. [ECF No. 34 at 10].[3] Accordingly, the Court finds that the Dominican Republic is an available forum.

### 2. Adequate forum

A forum is considered adequate if it can provide relief to a plaintiff, as "[a] remedy is *inadequate* when it amounts to *no remedy at all*." *See Aldana*, 578 F.3d at 1290 (citations and

---

[3] The affidavit by Wanda Perdomo Ramírez submitted by Signature asserts that the parties may agree to extend the statute of limitations arising from an action and that such agreements will be honored by courts in the Dominican Republic. [ECF No. 34-2 at ¶ 18].

5

internal quotation marks omitted) (emphasis added); *see Tyco*, 218 Fed. App'x at 865. The substantive law of the foreign forum need not be as favorable to the plaintiff as the law of the plaintiff's chosen forum. *Tyco*, 218 Fed. App'x at 865 (citing *Piper Aircraft*, 454 U.S. at 247). "[T]he mere fact that the alternative forum does not provide for contingent fee agreements, operates under different procedures, is less substantively generous, or lacks jury trials, does not render that forum inadequate." *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1263 (S.D. Fla. 2001) (citations omitted).

In their Reply, Plaintiffs do not contest the adequacy of the forum. [ECF No. 56 at 7]. Additionally, the Court notes that Signature has submitted an affidavit by Wanda Perdomo Ramírez, an attorney licensed to practice law in the Dominican Republic and with substantial knowledge of the judiciary system and civil liability laws of that country. [ECF No. 34-2 at ¶¶ 1–5]. Ms. Perdomo Ramírez asserts the following with respect to the adequacy of the forum: Dominican courts have jurisdiction to hear any case arising out of an accident in the Dominican Republic; there is no cap on damages; contingent fee agreements are available; during the proceedings, the parties can submit physical evidence, visit any site significant to the litigation, and examine lay and expert witnesses; and the judge can compel a party to be present as a witness subject to an economic sanction for failure to appear. [*Id.* at ¶¶ 17, 21–23]. Given Plaintiffs' acquiescence and the Court's own analysis, the Court finds that the Dominican Republic is an adequate alternate forum.

### B. *The private interest factors balance in favor of dismissal.*

The Court next considers the balance of the private interest factors, including "the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment." *Wilson*, 590 F.3d at 1270 (citations omitted). "These factors are not exhaustive, and the district

court should be flexible in applying them." *Id.* (citing *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381–82 (11th Cir. 2009)).

The Court, when balancing these factors, must be mindful of the strong presumption in favor of the plaintiffs' choice of forum. *See Piper Aircraft*, 454 U.S. at 255. However, "the plaintiffs' forum choice alone is not dispositive." *Aldana*, 578 F.3d at 1293. Rather, "the plaintiffs' choice of forum . . . is ultimately only a proxy for determining the convenience of litigating in one forum instead of another, and . . . at bottom, 'the central focus of the *forum non conveniens* inquiry is convenience.'" *Id.* at 1294 (quoting *Piper Aircraft*, 454 U.S. at 249). The Court must "retain flexibility" and be mindful of the fact that "each case turns on its facts." *Id.* at 1293–94 (quoting Piper Aircraft, 454 U.S. at 249). Even so, district courts in the Eleventh Circuit "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (citations and internal quotation marks omitted).

### 1. <u>The relative ease of access to sources of proof</u>

The first factor—the relative ease of access to sources of proof—is "[p]erhaps the most important private interest of the litigants." *McLane v. Marriott Intern., Inc.*, 547 Fed. App'x 950, 955 (11th Cir. 2013) (quoting *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003)). "A correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof." *Ford*, 319 F.3d at 1308.

7

Here, the evidence of the incident and the corresponding evidence of La Fontaine's initial medical care are outside of Florida. La Fontaine sustained her injuries on the zipline course in the Dominican Republic. [ECF No. 56 at 3–4]. Much of the evidence, including the physical evidence from the zipline and critical witnesses concerning liability, is located in the Dominican Republic. La Fontaine was treated for her injuries at a hospital in the Dominican Republic, and later in Ann Arbor, Michigan, near her home in Ypsilanti, Michigan. [*Id.* at 4]. She continues to receive treatment in Michigan during the pendency of this action. [*Id.*].

Plaintiffs argue that the Court has available the most dispositive pieces of documentary evidence concerning Defendant's liability: the video taken on Plaintiff Melendez's phone [ECF No. 56-7] and Signature's inspection report from December 2, 2013 [ECF No. 56-8]. *See* [ECF No. 56 at 11]. Plaintiffs assert that the documentary evidence available within this Court's jurisdiction is sufficient to maintain the action here, including any additional documents or records from the December 2013 inspection are located on the laptop of Signature's employee, Michael Denlinger, who inspected the Cumayasa course. *See generally* [ECF No. 56-3]. Also, Signature's company files, which include the contracts, inspection reports, client correspondence, invoices, and shipping information regarding the Cumayasa course, are located in Georgia and are all in English. [*Id.*].

The Court has reviewed the video of the incident. While the video provides a view of the beginning of the course through the moment in which the zipline collapsed, the visual span of the video is somewhat limited, and only a portion of the line is visible. As the video does not reveal all relevant parts of the zipline, witness testimony and a site visit are likely necessary. Similarly, the reports from Signature's visits to Cumayasa are not dispositive to the showing of liability. The pre-accident inspection report from December 2013 notes that the lower cable on zipline two "is showing minor signs of 'bird caging'" and that the "cable should be monitored and replaced

. . . in 3 months if [the] condition does not improve." [ECF No. 56-8 at 2]. Additionally, Signature's Georgia office maintains records, including photographs, from the July 2014 post-incident visit to Cumayasa. [ECF No. 56-1 at 38:1–39:19]. Given that the Court must consider the "necessary evidence required to prove and disprove each element," *Ford*, 319 F.3d at 1308, the Court focuses on the relevant timeline necessary to determine liability here. The pre-accident inspection report from December 2013 and the post-visit documents from July 2014 are but two bookends of the liability narrative of those intervening months. It is apparent that much of the evidence necessary to a proper determination of liability is likely to be in the Dominican Republic. *See id.* at 1308–09 (finding that dismissal based on *forum non conveniens* was proper and that Florida was "unquestionably the worst" possible forum where most of the evidence was located in Hong Kong and where Florida had very little, if any, connection to the litigation).

Furthermore, admission of the available documentary evidence fails to overcome Signature's need to compel third-party witnesses and obtain documents outside this Court's jurisdiction. The Eleventh Circuit has affirmed that the "inability to compel third-party witnesses or the production of documents from those witnesses, and the inability to implead potentially liable third-parties, is both unusually extreme and materially unjust." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011). Signature has identified the following witnesses it deems necessary to its defense: Carlos Arriaza, the owner of Cumayasa; the Cumayasa guide who was harnessed with La Fontaine at the time of her fall; and at least eight Cumayasa workers who worked on the zipline course between December 2013 and the date of the incident. [ECF No. 59 at 4–5]. In addition to the necessary testimonial evidence from Cumayasa's employees regarding liability, Signature has identified three post-incident medical witnesses in the Dominican Republic whose testimony is pertinent to a determination of damages. [*Id.* at 7].

9

Plaintiffs have attempted to tilt the scales in their favor by filing a Supplemental Response [ECF No. 68], to which they have attached the Declaration of Carlos A. Arriaza [ECF No. 68-1], the owner of Cumayasa—a defaulted Defendant in this case that has not made an appearance. In the Declaration, Mr. Arriaza agrees to "produce any documents or records which may be relevant to the action pending in the Southern District of Florida," to "voluntarily attend a deposition in this action, at a mutually agreed time and place in the Dominican Republic without the need for Letters Rogatory," and to "allow an on-site inspection of the zipline in question at a mutually agreed upon time." [*Id.* at ¶¶ 3–5].

While at first glance the Declaration appears to remedy Signature's concerns about access to unavailable evidence, a closer analysis shows that the balance has changed very little.[4] First, the Court notes that it likely has no authority to enforce this agreement between Plaintiffs and Mr. Arriaza, someone beyond the Court's jurisdiction. Furthermore, Mr. Arriaza does not agree to produce his agents and employees, including the worker who was harnessed to La Fontaine during the accident, the eight to ten employees present during Signature's December 2013 inspection, or any other contractors who worked on the zipline course. Signature has no control over any of these individuals, [ECF No. 59-1 at ¶ 7], yet Signature argues that their testimony "bears directly on Signature's defense." [ECF No. 69 at 3–4]. The inability to obtain the testimony of those other witnesses will potentially hinder Signature's ability to present a defense in this case. Similarly, Signature will be unable to implead any of these, or other, third parties in

---

[4] The Court further notes that the Declaration is the result of Plaintiffs' agreement to voluntarily dismiss Cumayasa, a defaulted Defendant in this case, in exchange for Mr. Arriaza's cooperation in the remaining claim against Signature in this case. [See ECF No. 69-1 at 6]. While it is not the Court's role to referee the parties' settlement tactics, this fact is nevertheless relevant to the balancing of conveniences in the present *forum non conveniens* analysis. It would be inconvenient—or even unfair—for the Court not to weigh this fact and, in essence, to allow the currently-defaulted Defendant to sidestep this Court's jurisdiction and then assist Plaintiffs in manipulating the balance of the *forum non conveniens* factors. *Cf. ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (noting that "a federal court, sitting in equity, possesses all of the common law equity tools . . . to process litigation to a just and equitable conclusion").

the Dominican Republic outside this Court's jurisdiction. [*Id.* at 4]. Finally, there is likely no way for Mr. Arriaza to guarantee the cooperation of any employees or contractors located in the Dominican Republic or of the medical personnel who treated La Fontaine immediately after the accident.

Additionally, the fact that Mr. Arriaza has agreed with Plaintiffs to sit for a deposition and produce documents[5] in the Dominican Republic does little to affect the *forum non conveniens* analysis here because Signature still has no control over Mr. Arriaza and will be unable to compel his live testimony before a jury in this district. *See Singletary v. Grupo Pinero*, 45 F. Supp. 3d 1369, 1373 (S.D. Fla. 2014) ("Several of these witnesses are no longer under the control of the Resort and therefore Defendants would not be able to compel live attendance of these witnesses at a trial in the Southern District of Florida.") (citation omitted); *Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1376 (S.D. Fla. 2013) ("But given the importance of these witnesses in assessing the disputed factual issues, the Court finds that no adequate substitute exists for the witnesses' live testimony and that the lack of access to this testimony weighs very strongly in favor of dismissal."); *McLane v. Marriott Int'l, Inc.*, 960 F. Supp. 2d 1351, 1360 (S.D. Fla. 2013) (finding that the "private interest factors also strongly weigh in favor of dismissal because the most critical witnesses concerning liability cannot be compelled to testify in this Court"), *aff'd*, 547 F. App'x 950 (11th Cir. 2013).

**2. Access to willing witnesses**

The next factor, the "cost of obtaining attendance of willing[] witnesses," *Piper Aircraft*, 454 U.S. at 241 n.6, (1981), balances evenly for the parties in this case. There is little to no evidence relevant to this case in Florida. Plaintiffs' Michigan witnesses and Defendant's Georgia

---

[5] Signature further argues that most, if not all, of the documents under Cumayasa's control are in Spanish and that voluntary production of the documents for submission to this Court will add a substantial translation cost that this Court should factor into the analysis. [ECF No. 34 at 12].

witnesses will have to travel to Florida or the Dominican Republic for trial.[6] The parties and their witnesses will have relatively the same inconvenience of traveling to the Dominican Republic as they would of traveling to Miami. *See Goldstein v. Hard Rock Cafe Intern. (USA), Inc.*, 519 Fed. App'x 653, 655 (11th Cir. 2013) (affirming that because the plaintiffs' "witnesses reside in New Jersey and would have to travel either to Florida or the Dominican Republic for this suit, there would be little difference between travel costs and inconveniences regardless of which forum was chosen"); *cf. Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 107 (2d Cir. 2000) ("For any nonparty witnesses, the inconvenience of a trial in New York is not significantly more pronounced than the inconvenience of a trial in England.").

### 3. Ability to compel testimony of unwilling witnesses

The third factor, availability of compulsory process for unwilling witnesses, favors dismissal. Many critical witnesses, including Cumayasa and Resort employees and the hospital and other medical staff who initially treated La Fontaine, are located in the Dominican Republic. With the exception of Mr. Arriaza's apparent willingness to appear for a deposition in the Dominican Republic and to produce documents, there is no other indication that the witnesses identified by Signature would be willing to appear for testimony in this Court. This Court is unable to compel the attendance of Dominican witnesses who are foreign nationals for trial in Florida. *See Perez-Lang*, 575 F. Supp. 2d at 1350 (applying the doctrine of *forum non conveniens* and dismissing action because critical witnesses resided in the Dominican Republic and the court could not compel the testimony of such witnesses).

Plaintiffs make much of the fact that the witnesses in the Dominican Republic could find a way to avoid testimony in the Dominican courts because of their courts' lack of compulsory

---

[6] Plaintiffs argue that every one of their witnesses will have to travel to the Dominican Republic to testify if the Court dismisses their case. [ECF No. 56 at 13]. Plaintiffs have submitted the declaration of Juan Manuel Suero, an attorney licensed to practice law in the Dominican Republic, in which Mr. Suero asserts that the courts of the Dominican Republic do not accept deposition or video testimony in lieu of live testimony. [ECF No. 56-9 at ¶ 6].

power. [ECF No. 56 at 13]. While the Dominican Republic Civil Procedure Code does not provide for the courts to compel witnesses' attendance, there is a provision in place to impose economic sanctions for failure to testify. [ECF No. 56-9 at ¶¶ 4–5]; [ECF No. 32-2 at ¶ 21]. What is important in this analysis is that *this* Court is clearly unable to compel attendance of those witnesses in *this* tribunal. The fact that the process in Dominican courts to obtain the testimony of Dominican witnesses may be different than the process here does not remedy Signature's barrier to necessary witnesses in this Court. Signature has a greater chance of obtaining their testimony in the Dominican Republic.

### 4. The possibility of viewing the premises

The next factor—the ability of the jury to view the accident scene—also supports dismissal. The accident occurred in the Dominican Republic, where a jury visit to the accident scene may be necessary. The Dominican Civil Procedure Code allows visits to sites that have any significance to the litigation. [ECF No. 34-2 at ¶ 20]. This Court cannot transport jurors internationally. *See Perez-Lang v*, 575 F. Supp. 2d at 1351 (finding that dismissal is warranted if a visit to the accident scene might be necessary due to the nature of the allegations in the complaint). As noted above, the video taken on Plaintiff Melendez's phone provides a limited view of the beginning of the second zipline run through the moment in which the zipline collapsed. [ECF No. 56-7]. While a site visit may not necessarily be more helpful to the trier of fact than recourse to the video and photographs of the second zipline run, the Court is unwilling to foreclose that possibility. *See Beaman*, 790 F. Supp. 2d at 1378 ("Though photographs and diagrams might be sufficient, a viewing of the scene could be useful or necessary.").

### 5. The enforceability of a judgment

Signature's President has asserted that "Signature agrees and stipulates that it will submit to the enforceability of any adverse judgment rendered against it by the courts of the Dominican

Republic." [ECF No. 59-1 at ¶ 8]. Final judgments are enforceable both in the Dominican Republic and abroad through judicial cooperation. [ECF No. 34-2 at ¶ 14]. Additionally, Signature's insurer, Admiral Insurance Company, has agreed in writing that it will not deny coverage based solely on transfer of the suit to the Dominican Republic. [ECF No. 59-3 at 3].

Viewed together, the private interest factors outweigh Plaintiffs' choice of forum and support a dismissal based on the *forum non conveniens* analysis. Absent this Court's ability to compel the testimony of necessary third party witnesses and to implead potentially liable third parties, Signature has shown "unusually extreme circumstances" and "material injustice" that strongly balance in favor of dismissal based on *forum non conveniens*. *See SME Racks*, 382 F.3d at 1101.

### C. *The public interest factors further balance in favor of dismissal.*

Even though the Court has already determined that the balance of private interest factors favors dismissal, the Court has the discretion to consider the balance of public interest factors as well. *See Morse v. Sun Int'l Hotels*, Ltd., No. 98-7451-CIV, 2001 WL 34874967, at *6 (S.D. Fla. Feb. 26, 2001), *aff'd sub nom. Morse v. Sun Int'l Bahamas, Ltd.*, 277 F.3d 1379 (11th Cir. 2001). "A trial court will look at the private interests first and then, if the balance of the private interests are found to be in equipoise or near equipoise, it will determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum." *Wilson*, 590 F.3d at 1270 (quoting *King*, 562 F.3d at 1382 (internal quotation marks omitted). Accordingly, the Court will consider the following public interest factors: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in the application of foreign

law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6 (citation and internal quotation marks omitted).

### 1. **Administrative difficulties**

As this Court has recognized, "[t]he Southern District of Florida has one of the busiest dockets in the country; therefore, the administrative burden for a matter with little connection to Florida is a concern." *Cleveland v. Kerzner Int'l Resorts, Inc.*, No. 1:14-CV-23897, 2015 WL 5695276, at *7 (S.D. Fla. Sept. 29, 2015); *see also General Information*, United States District Court: Southern District of Florida, http://www.flsd.uscourts.gov/?page%20id=411 (last visited Mar. 8, 2016) ("The Southern District of Florida (SDFL) has long been one of the busiest Federal trial courts in this Country."). That said, this factor "is entitled to little or no weight in the analysis." *Matthews v. Whitewater West Indus., Ltd.*, No. 11-24424-CIV, 2012 WL 1605184, at *11 (S.D. Fla. May 8, 2012) (citations and internal quotation marks omitted).

### 2. **The local interest**

The Court must consider both Florida's interest in the litigation as well as the federal interest. *See SME Racks*, 382 F.3d at 1104. "There is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1311 (11th Cir. 2002). While the United States as a whole may have an interest in the safety of its vacationing citizens,[7] it is clear that Florida and the Southern District of Florida have little connection to the pertinent facts of this litigation.[8]

---

[7]   The Eleventh Circuit has recognized that there is a "federal interest in ensuring that, as a general rule, United States citizens have access to the courts of this country for resolution of their disputes. There is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *Esfeld*, 289 F.3d at 1311.

[8]   Plaintiffs have failed to show a more direct relation to the State of Florida in order to balance the public-interest analysis differently.

15

Compared with any interest Florida may have in this litigation, the strongest interests actually lie with the Dominican Republic and, perhaps, the States of Georgia and Michigan. *See Perez-Lang*, 575 F. Supp. at 1352 (finding that the "dispute is clearly a Dominican Republic controversy because the accident occurred in that forum" and that "the Dominican Republic has a substantial interest in resolving the issues presented by the instant action, such as the safety of guests"); *Goldstein*, 519 F. App'x 653, 655 (11th Cir. 2013) (affirming that "because the slip-and-fall happened in the Dominican Republic, the district court correctly considered the Dominican Republic's significant interest in deciding a controversy arising from occurrences on its own soil"); *cf. Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 Fed. App'x 962, 967 (11th Cir. 2014) ("The facts that the [plaintiffs] are American citizens (albeit of New Jersey, not Florida) and that [the defendant] is headquartered within the Southern District of Florida do not overcome the Bahamas [sic] undisputed strong interest in the case.").

### 3. A forum at home with the law; conflicts of law; and the application of foreign law

Dominican law will likely govern this action. *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (stating that the law of the state in which both the injury and the conduct causing the injury occurred is, in most cases, the applicable law). If the action were to stay in Florida, this Court would have to interpret Dominican law, including any particularities of Dominican negligence law. "A Florida district court likely is not 'at home' with Dominican law, nor would a jury be familiar with applying this foreign law." *Goldstein*, 519 F. App'x at 655. Any interpretation would require the Court's use of expert testimony regarding substantive Dominican law. "[W]hile the application of foreign law . . . cannot be accorded dispositive weight," *SME Racks*, 382 F.3d at 1104–05, "[t]he need to apply foreign law . . . also favors dismissal," *Tazoe*, 631 F.3d at 1334. Additionally, Dominican law is written in Spanish, [ECF No. 34-2 at ¶ 11], so this Court would need to obtain translations of any applicable law. *Cf.*

16

*Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1218 n.5 (11th Cir. 1985) (affirming dismissal under *forum non conveniens* where, *inter alia*, the district court would need to "consider a foreign law with which the Court is not familiar and which is in a foreign language"). This increased expense and administrative burden on the Court is an additional factor supporting dismissal.

### 4. Burdening citizens with jury duty

The incident took place in the Dominican Republic, Plaintiffs are Michigan residents, and Defendant Signature is a Georgia citizen. The connections to Florida at this stage of the litigation are entirely tangential and unrelated to Plaintiffs' remaining claims. Namely, Signature has two part-time Florida employees, Signature conducts approximately ten inspections annually in Florida, and Signature engaged in a construction project at Broward County Community College in 2012. [ECF No. 56-1 at 13:10–14:7, 22:13–15, 23:2–8]. Balancing these limited connections with the facts of the case, the Court does not find enough to justify keeping the case in this district. Indeed, the action would be an unfair burden on the State of Florida and this district. Plaintiffs' claims in the instant case involve very miniscule—if any—association to Florida.[9] As a result, Florida jurors would have to make findings about an incident in the Dominican Republic concerning Michigan residents and a Georgia corporation. This is not a burden that should be imposed in the instant case, as "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *SME Racks*, 382 F.3d at 1101 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509 (1947)); *see also Rivas ex rel. Estate of Gutierrez v. Ford Motor Co.*, No. 8:02 CV-676-T-17 EAJ, 2004 WL 1247018, at *14 (M.D.

---

[9] The Court further notes that, pursuant to Plaintiffs' agreement to voluntarily dismiss Cumayasa in exchange for Mr. Arriaza's deposition testimony and production of documents, perhaps transfer of venue under 28 U.S.C. § 1404(a) to the Northern District of Georgia would be an appropriate alternative in this case—if the Motion to Dismiss were denied. As Signature—both incorporated in the State of Georgia and with its principal place of business in Douglasville, Georgia—would be the only defendant in this case after the voluntary dismissal of Cumayasa, Georgia and its citizens certainly would have more interest in the outcome of this case than Florida and this Court. Even the contract between Signature and Cumayasa contains a forum selection clause requiring disputes between those two parties to be litigated in Georgia. [ECF No. 56-2 at 3].

Fla. Apr. 19, 2004) ("The promise of a long trial with complex translations, foreign law specialist testimony, and unavailable key witnesses would unfairly burden the local citizenry.").

### D. *Plaintiffs can reinstate their suit in the Dominican Republic.*

Plaintiffs can reinstate their suit without undue prejudice or inconvenience. *See GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014). Signature has stipulated to the jurisdiction of the Dominican Republic and to waive the statute of limitations. [ECF No. 34 at 17]. These stipulations are sufficient for the court to find that Plaintiffs can reinstate their case in the Dominican Republic without undue burden. *See Tazoe*, 631 F.3d at 1335 (affirming the district court's dismissal of a case based on *forum non conveniens* where the defendants stipulated to consent to service of process, court jurisdiction, and the tolling of statute of limitations for the refiling of a case in Brazil, thus "remov[ing] any impediment to reinstatement"); *see also Perez-Lang*, 575 F. Supp. 2d at 1353 ("This Court accepts the Defendant's representation that they will submit to suit in the Dominican Republic. Given this stipulation, the Plaintiff has not asserted a sufficient basis upon which this Court could find that the Plaintiff would suffer undue prejudice or greater inconvenience in a Dominican court."). Accordingly, the Court finds that Plaintiffs can reinstate their suit without undue prejudice or inconvenience in the Dominican Republic.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss **[ECF No. 34]** is **GRANTED**;
2. this cause is **DISMISSED without prejudice.** Plaintiffs are directed to
    a. file their suit in the Dominican Republic and

    b. seek reconsideration of this Order if Defendant refuses to waive any jurisdictional or statute of limitations defenses which may be available to Defendant under the laws of the Dominican Republic;

3. this action shall be **CLOSED** for administrative purposes, and all pending motions, if any, are **DENIED as moot**; and

4. with respect to Plaintiffs' claims against Cumayasa Sky Adventure, SRL, Plaintiffs shall file either a Notice of Dismissal or a Motion for Default Judgment within ten (10) days of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of March, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Turnoff
All Counsel of Record